**UNITED STATES COURT OF INTERNATIONAL TRADE**

| | |
|---|---|
| DANIK INDUSTRIES LIMITED,<br><br>Plaintiff,<br><br>vs.<br><br>UNITED STATES OF AMERICA; U.S. CUSTOMS & BORDER PROTECTION; RODNEY S. SCOTT, in his official capacity as Commissioner of U.S. Customs & Border Protection,<br><br>Defendants. | **Court No. 26-03813** |

# COMPLAINT

1. Plaintiff, Danik Industries Limited, ("Plaintiff"), is an importer of merchandise subject to the challenged duties, and acts as the nonresident Importer of Record for such imports.

2. Beginning in February 2025, through a series of executive orders, President Trump invoked the International Emergency Economic Powers Act ("IEEPA") as authority to impose tariffs ("IEEPA duties") on goods imported from nearly every foreign country, including countries from which Plaintiff sources its imports. Plaintiff is responsible for paying these tariffs on its imported goods.

3. On February 20, 2026, the U.S. Supreme Court struck down these tariffs, holding that "IEEPA does not authorize the President to impose tariffs." *See Learning Resources, Inc. v. Trump*, No. 24-1287, Slip Op. at 20 (U.S. Feb. 20, 2026) (affirming *V.O.S. Selections, Inc. v. Trump*, 149 F.4th 1312 (Fed. Cir. 2025)). The Supreme Court's decision invalidated the legal basis for the IEEPA tariff regime.

4. Despite the Supreme Court's ruling, there is a risk that importers, including Plaintiff, may not be assured refunds of the unlawfully collected tariffs without their own court judgment providing judicial relief. *See AGS Company Automotive Solutions v. U.S. Customs and Border Protection*, Consol Court No. 25-255, Slip Op. 25-154 (Ct. Int'l Trade Dec. 15, 2025).

5. At least some of Plaintiff's entries on which IEEPA duties were paid are now liquidated more than 80 days, and as such are not eligible for the "Consolidated Administration and Processing of Entries" ("CAPE") system established by U.S. Custom & Border Protection ("CBP") in the absence of a court order.

6. With respect to all import entries for which it paid IEEPA duties, Plaintiff seeks an order requiring Defendants to refund all IEEPA duties Plaintiff already paid on its covered imports, together with interest. For entries subject to IEEPA duties are liquidated more than 80 days, or that will become so during the pendency of this action, Plaintiff also seeks remedial relief in the form of reliquidation such that Plaintiff can receive a refund (with interest) of all IEEPA duties paid.

**PARTIES**

7. Plaintiff Danik Industries Limited is a nonresident importer of record for entries of merchandise on which IEEPA duties were paid.

8. Defendant United States of America received the disputed tariffs and is the statutory defendant under 5 U.S.C. § 702 and 28 U.S.C. § 1581(i)(1)(B).

9. Defendant United States Customs and Border Protection ("CBP") is the United States agency that is responsible for collecting duties on imported merchandise. CBP collected payments made by Plaintiff of IEEPA duties on its entries.

10. Defendant Rodney S. Scott is the Commissioner of CBP and is sued in his official capacity.

11. Defendants are referred to collectively in this complaint as "Defendants."

## JURISDICTION

12. The Court has subject-matter jurisdiction over this action under 28 U.S.C. § 1581(i)(1)(B), which confers on the Court exclusive jurisdiction over "any civil action commenced against the United States, its agencies, or its officers, that arises out of any law of the United States providing for … (B) tariffs, duties, fees, or other taxes on the importation of merchandise for reasons other than the raising of revenue."

13. The Court of International Trade ("CIT"), the Federal Circuit, and the United States Supreme Court have ruled that the CIT has exclusive jurisdiction over cases involving the constitutionality of IEEPA duties pursuant to 28 U.S.C. § 1582(i)(1)(B). *See Learning Resources,* Slip Op. at 5, footnote 1; *V.O.S. Selections, Inc. v. Trump*, 149 F.4th 1312, 1328-29 (Fed. Cir. 2025) ("*V.O.S. Selections II"*); *V.O.S. Selections, Inc. v. United States*, 772 F. Supp. 3d 1350, 1366-67 (Ct. Int'l Tr. 2025) (*"V.O.S. Selections I"*). The Federal Circuit stated that a claim "'arises out of' a tariff law 'for reasons other than the raising of revenue'" for purposes of 28 U.S.C. § 1581(i)(B) if the law in question "is invoked as the authority to impose a tariff for such a non-revenue raising purpose," *regardless of whether* the invoked law "does in fact confer such authority." *VOS Selections II*, 149 F.4th 1312, 1328-29. The Supreme Court affirmed this jurisdictional finding in *Learning Resources*, ruling in *Learning Resources* that the issue is "within the exclusive jurisdiction of the CIT" on the grounds that "{w}here, as here, such modifications{to the HTSUS} are made under an 'Act{} affecting import treatment,' 19 U.S.C. § 2483, they are 'considered to be statutory provisions of law for all purposes,'" and therefore "the

plaintiffs' challenges 'arise{} out of {a} law of the United States providing for…tariffs.'" *Learning Resources*, 607 U.S. ___, Slip Op. _____ at 5, footnote 1. The Supreme Court expressly cited 28 U.S.C. § 1582(i)(1) as the statutory basis for the CIT's jurisdiction. *Id.*

14. Jurisdiction is available under 28 U.S.C. § 1581(i) because it is not available under 28 U.S.C. § 1581(a), or alternatively because the remedy of protest would be "manifestly inadequate." *See Thomson Consumer Electronics, Inc. v. United States*, 247 F.3d 1210, 1214 (Fed. Cir. 2001) ("It is well-established that this residual jurisdictional provision {under § 1581(i)} is only available when no other provision of 28 U.S.C. § 1581 is available or when the remedy under any other subsection would be manifestly inadequate.").

15. The CIT has jurisdiction under 28 U.S.C. § 1581(a) over any civil action "commenced to contest the denial of a protest." *See* 28 U.S.C. § 1581(a). This jurisdiction only extends to appeals from "valid" protests, however. *See Borusan Mannesmann Boru Sanayi ve Ticaret A.S. v. United States,* 578 F. Supp. 3d 1333, 1344 (Ct. Int'l Tr. 2022) ("The Federal Circuit has held consistently that 28 U.S.C. § 1581(a) 'provides no jurisdiction for protests outside the{} exclusive categories listed in 19 U.S.C. § 1514(a).'"). 19 U.S.C. § 1514(a) provides for administrative protest of "any clerical error, mistake of fact, or other inadvertence, whether or not resulting from or contained in an electronic transmission, adverse to the importer, in any entry, liquidation, or reliquidation," and of "decisions of the Customs service" as to seven enumerated topics. *See* 19 U.S.C. § 1514(a). In order to be reviewable by the Court under 28 U.S.C. § 1581(a), a protest must fall within one of the seven enumerated categories of 19 U.S.C. § 1514(a); if it does not, it does not address a "protestable decision" and consequently does not constitute a "valid protest." *Borusan Mannesmann*, 578 F. Supp. 3d at 1340.

16. The courts have long held that where CBP's role in assessing or liquidating duties is "merely ministerial," actions by CBP within such ministerial role are not protestable "decisions" under 19 U.S.C. § 1514(a). *See, e.g., Industrial Chemicals, Inc. v. United States,* 941 F.3d 1368, 1371 (Fed. Cir. 2019) ("Customs' 'merely ministerial' actions are not protestable under 19 U.S.C. § 1514."); *Gilda Industries, Inc. v. United States*, 446 F.3d 1271, (Fed. Cir. 2006); *Mitsubishi Electronics America, Inc. v. United States,* 44 F.3d 973, 977 (Fed. Cir. 1994).

17. The Executive Orders that imposed the IEEPA duties make clear that CBP's role in their implementation is merely ministerial. In each executive order, CBP (as the agency within the Department of Homeland Security responsible for collecting duties on imported merchandise) is expressly instructed to implement the tariffs, and provided no discretion with regard thereto. Executive Orders 14193, 14194, and 14195 instructed that "the Secretary of Homeland Security shall determine the modifications necessary to the Harmonized Tariff Schedule of the United States (HTSUS) in order to effectuate the objectives of this order consistent with law and shall make such modifications to the HTSUS through notice in the Federal Register." *See Executive Order 14193: Imposing Duties to Address the Flow of Illicit Drugs Across Our Northern Border*, 90 Fed. Reg. 9113, 9115 (February 7, 2025) ("Executive Order 14193"); *see also Executive Order 14195 of February 1, 2025: Imposing Duties to Address the Synthetic Opioid Supply Chain in the People's Republic of China*, 90 Fed. Reg. 9121, 9123 (February 7, 2025) ("Executive Order 14195"). Executive Order 14257 attached an Annex that set forth the specific changes and additions to the HTSUS that CBP was required to make. *See Executive Order 14257: Regulating Imports with a Reciprocal Tariff to Rectify Trade Practices that Contribute to Large and Persistent Annual United States Goods Trade Deficits*, 90 Fed. Reg. 15041, 15047, 15088-15109 (April 7, 2025) ("Executive Order 14257").

18. In *AGS Company Automotive Solutions v. U.S. Customs and Border Protection*, Slip Op. 25-154 at 7, 2025 WL 3634261 (Ct. Int'l Tr. December 15, 2025) ("*AGS*"), the Court found that "{b}ecause Customs has no authority to make any decision regarding the legality or constitutionality of the Executive Orders at issue, this court has jurisdiction pursuant to 28 U.S.C. § 1581(i) rather than § 1581(a)."

19. The Supreme Court's ruling that the IEEPA duties are unlawful does not change the ministerial nature of CBP's role with regard to entries filed prior to that ruling. At the time that Plaintiff's entries were filed, application of IEEPA duties was in compliance with the instructions in the executive orders, and therefore involved no decision on the part of CBP; the Supreme Court's February 20, 2026 ruling does not retroactively transform that ministerial act into a protestable CBP "decision" as to "classification and rate and amount of duties chargeable." 19 U.S.C. § 1514(a)(2).

20. Nor does the automatic liquidation of entries with IEEPA duties after the Supreme Court's decision constitute a protestable event. Where, as here, CBP acts in a ministerial role, it is constrained to act only as specifically instructed by the appropriate governmental authority. *See Gilda*, 446 F.3d at 1276 (explaining that where "Customs has no authority to overturn or disregard" an instruction, protest is not available because "Customs would have no authority to grant relief in a protest action challenging the imposition of the duty"). Although the administration has issued an executive order rescinding the IEEPA duties and directing CBP to "take all appropriate steps to end the additional *ad valorem* duties imposed under IEEPA," it has not yet issued any instructions to CBP with regard to IEEPA duties already paid on past entries. As such, CBP does not have authority to determine how the Supreme Court's decision is to be applied to past entries upon their liquidation.

21. Finally, because protest is not available as a remedy, the IEEPA duties do not become final pursuant to 19 U.S.C. § 1514 180 days after protest, and this Court has jurisdiction to order refunds on entries regardless of liquidation status. 19 U.S.C. § 1514 provides that "decisions of the Customs Service" as to the issues enumerated in 19 U.S.C. § 1514(a)(1)-(7) "become final and conclusive…unless a protest is filed." Because the application of IEEPA duties to the entries at issue is not a protestable "decision" of CBP, it does not become "final and conclusive" 180 days after liquidation. Accordingly, where this court has jurisdiction under 28 U.S.C. 1581(i), it may order relief in the form of refunds even for entries more than 180 days after liquidation.

22. Therefore, until the administration or the courts provide CBP with express instructions as to how entries subject to IEEPA duties are to be treated at liquidation, the automatic liquidation of entries with IEEPA duties is a mere continuation of its ministerial duties, and as such is not protestable; even if a protest were to be filed, CBP does not have the power to issue a decision, and such protest would be manifestly inadequate.

23. The Court has the same powers at law and in equity as a United States District Court. *See* 28 U.S.C. § 1585. In a civil action under 28 U.S.C. § 1581, the Court can enter a money judgment against the United States and can order any other appropriate civil relief, including declaratory judgments, injunctions, orders of remand, and writs of mandamus or prohibition. *See* 28 U.S.C. §§ 2643(a)(1), (c)(1).

## **STANDARD OF REVIEW**

24. Pursuant to 28 U.S.C. § 2640(e), actions commenced pursuant to § 1581(i) are to be reviewed as provided in 5 U.S.C. § 706, which requires that the Court will "hold unlawful and set aside agency action, findings, and conclusions found to be … (B) contrary to constitutional

right, power, privilege or immunity," or "(C) in excess of statutory jurisdiction, authority, or limitations, or short of statutory right." 5 U.S.C. § 706(2)(B), (C); 28 U.S.C. § 2640(e).

## STANDING

25. 28 U.S.C. § 2631(i) states that "{a}ny civil action of which the Court of International Trade has jurisdiction . . . may be commenced in the court by any person adversely affected or aggrieved by agency action within the meaning of Section 702 of title 5.").

26. Plaintiff, as the importer of record for entries subject to IEEPA duties, is adversely affected and aggrieved by the requirement to pay the unlawful IEEPA duties.

## TIMELINESS

27. Pursuant to 28 U.S.C. § 2636(i), a plaintiff must commence an action that takes place pursuant to the Court's jurisdiction under 28 U.S.C. § 1581(i) "within two years after the cause of action first accrues." The first Executive Order that resulted in the collection of IEEPA duties paid by Plaintiff was issued on February 1, 2025, and published in the Federal Register on February 7, 2025. *See* Executive Order 14195.

28. Plaintiff's claims accrued at the earliest on February 1, 2025, when Defendants first issued Executive Order 14195. This action is therefore timely.

## GENERAL PLEADINGS

### I. President Trump ordered a series of tariffs, invoking IEEPA for his authority.

29. On February 1, 2025, President Trump issued three Executive Orders imposing new tariffs on imports from Canada, Mexico, and China: Executive Orders 14193, 14194, and 14195, respectively. All three Executive Orders, as well as Executive Orders that later amended the terms of those Orders, invoked IEEPA as the statutory basis for authorizing the tariffs.

30. Executive Order 14195 imposed s 10% tariff on virtually all goods originating in China. *See* Executive Order 14195, 90 Fed. Reg. 9121. President Trump subsequently issued a series of Executive Order modifying Executive Order 14195. *See Executive Order 14200: Further Amendment to Duties Addressing the Synthetic Opioid Supply Chain in the People's Republic of China*, 90 Fed. Reg. 11463 (March 7, 2025); *Executive Order 14228*: *Further Amendment to Duties Addressing the Synthetic Opioid Supply Chain in the People's Republic of China,* 90 Fed. Reg. 11463 (March 7, 2025); *Executive Order 14357: Modifying Duties Addressing the Synthetic Opioid Supply Chain in the People's Republic of China*, 90 Fed. Reg. 50725 (Nov. 7, 2025).

31. Executive Order 14194 imposed an additional 25% tariff on virtually all goods originating in Mexico. *See Executive Order 14194: Imposing Duties to Address the Situation At Our Southern Border*, 90 Fed. Reg. 9117 (February 7, 2025). In subsequent Executive Orders, the implementation of the tariffs was delayed until March 4, 2025, and effective March 7, 2025 became applicable only to non-USMCA goods of Mexico. *See Executive Order 14198: Progress on the Situation at Our Southern Border*, 90 Fed. Reg. 9185 (February 10, 2025); *See Executive Order 14232*: *Amendment to Duties to Address the Flow of Illicit Drugs Across our Southern Border,* 90 Fed. Reg. 11787 (March 11, 2025).

32. Executive Order 14193 imposed an additional 25% tariff on virtually all goods originating in Canada. *See* Executive Order 14193. Crude oil, natural gas, lease condensates, natural gas liquids, refined petroleum products, uranium, coal, biofuels, geothermal heat, the kinetic movement of flowing water, and critical minerals, as defined by 30 U.S.C. 1606(a)(3), were eligible for a 10% tariff. *Id*. In subsequent Executive Orders, the implementation of the tariffs was delayed until March 4, 2025, and effective March 7, 2025 became applicable only to

non-USMCA goods of Mexico. *See Executive Order 14197: Progress on the Situation at Our Northern Border*, 90 Fed. Reg. 9183 (February 10, 2025), 2025); *Executive Order 14231*: *Amendment to Duties to Address the Flow of Illicit Drugs Across our Northern Border,* 90 Fed. Reg. 11785 (March 11, 2025).

33. The tariffs imposed by Executive Orders 14193, 14194, and 14195, as amended, are referred to herein collectively as "Challenged Tariff Orders."

**II. CBP's implementation of the unlawful IEEPA duties**

34. CBP is charged with the assessment and collection of duties, including the IEEPA duties. *See* 19 U.S.C. §§ 1500, 1502.

35. CBP is responsible for assessing and collecting any tariffs, including the IEEPA duties, on due upon entry of imported goods. Tariff rates are determined principally by the classification of the goods under the Harmonized Tariff Schedule of the United States ("HTSUS"), which sets out the tariff rates and statistical categories using a series of nested chapters, headings, and subheadings. 19 U.S.C. § 1202.

36. The United States International Trade Commission ("USITC") publishes and maintains the HTSUS consistent with presidential orders. *See* 19 U.S.C. §§ 1202, 3005, 3006; *see also Michael Simon Design, Inc. v. United States*, 33 C.I.T. 1003, 1010 (2009) ("The authority to modify the HTSUS lies with the President"); *Maple Leaf Marketing, Inc. v. United States*, 582 F. Supp. 3d 1365, 1378–79 (Ct. Int'l Trade 2021).

37. Chapter 99 of the HTSUS provides for special classification provisions and requirements that apply in addition to the tariff rates provided for in Chapters 1-97 of the HTSUS. *See* 19 U.S.C. § 1202. Subchapter III to Chapter 99, HTSUS, provides for "Temporary Modifications Established Pursuant to Trade Legislation. *Id.*

38. In implementing the Challenged Tariff Orders, Defendants directed changes to the HTSUS, requiring that goods subject to the IEEPA duties to be entered under new tariff codes within Subchapter III to Chapter 99, HTSUS, in addition to all other applicable HTSUS subheadings.[1]

39. CBP communicates to the trade community information regarding changes to the HTSUS and CBP's administration of those changes via its Cargo Systems Messaging Service ("CSMS"). CBP has effectuated the collection of unlawful IEEPA duties, as communicated, through its CSMS guidance,[2] which is a final agency action subject to review under the APA. Each guidance marks the consummation of CBP's decision-making process because it announces the agency's implementation of the IEEPA duties.

**III. Liquidation**

40. "'Liquidation' means the final computation or ascertainment of duties on entries for consumption or drawback entries." 19 C.F.R. § 159.1.

[1] *See, e.g.*, *Amended Notice of Implementation of Additional Duties on Products of the People's Republic of China Pursuant to the President's February 1, 2025 Executive Order Imposing Duties to Address the Synthetic Opioid Supply Chain in the People's Republic of China*, 90 Fed. Reg. 9431 (February 12, 2025); *Further Amended Notice of Implementation of Additional Duties on Products of the People's Republic of China Pursuant to the President's February 1 2025 Executive Order Imposing Duties to Address the Synthetic Opioid Supply Chain in the People's Republic of China*, 90 Fed. Reg. 11426 (March 6, 2025); Executive Order 14257 at Annex III, 90 Fed. Reg at 15088-15109; *Notice of Implementation of Additional Duties on Products of Canada Pursuant to the President's Executive Order 14193, Imposing Duties to Address the Situation at Our Northern Border*, 90 Fed. Reg. 11429 (March 6, 2025).

[2] *See, e.g.,* CSMS # 64299816, Update – Additional Duties on Imports from China and Hong Kong (Mar. 3, 2025), available at https://content.govdelivery.com/accounts/USDHSCBP/bulletins/3d52328; U.S. Customs & Border Prot., CSMS # 64680374, Guidance – Reciprocal Tariffs, April 5 and April 9, 2025, Effective Dates (Apr. 8, 2025), available at https://content.govdelivery.com/accounts/USDHSCBP/bulletins/3daf1b6; CSMS # 64297449, GUIDANCE: Additional Duties on Imports from Canada (March 3, 2025); available at https://content.govdelivery.com/accounts/USDHSCBP/bulletins/3d519e9; CSMS # 64336037 – GUIDANCE – Update on Additional Duties on Imports from Canada – USMCA Qualifying Products and Potash (March 6, 2025), available at https://content.govdelivery.com/accounts/USDHSCBP/bulletins/3d5b0a5.

41. Typically, when goods are entered into the United States, the importer of record pays an estimated duty on the entry based on its customs declaration, which asserts a value, origin and HTSUS classification for the imported goods. *See* 9 U.S.C. § 1484.

42. Unless liquidation of an entry is extended or suspended, liquidation – that is, finalization of the duties paid at entry – must occur within one year from the date of entry. *See* 19 U.S.C. § 1504.

43. CBP may inspect or review an entry to confirm the final value, classification, duty rate, and final amount of duties prior to such liquidation. In most cases, however, liquidation is scheduled by CBP's systems to occur automatically, without inspection or review.

44. For "formal" entries with an entered value over $2,500, automatic liquidation typically occurs at least 314 days and not more than 1 year after the date of entry of the goods. Notice of liquidation for formal entries is posted on CBP's website at https://trade.cbp.dhs.gov/ace/liquidation/LBNotice/.

45. For "informal" entries with an entered value of $2,500 or less, automatic liquidation typically occurs within one month after entry.

46. "Decisions" of CBP enumerated in 19 U.S.C. § 1514(a), as well as clerical errors, mistakes of fact, or other inadvertence, become final 180 days after liquidation unless an administrative protest is filed. *See* 19 U.S.C. § 1514(a).

47. This Court has recently ruled that the imposition of tariffs under the authority of IEEPA does not present a protestable "Customs decision" while the Executive Orders imposing IEEPA duties remain extant, and that therefore "no § 1514 finality of liquidation occurs." *See* *AGS*, Slip Op. 25-154 at 7.

48. In *AGS*, this Court took notice of the Government's assertions in that case and related cases that "it will not object to the court ordering reliquidation of plaintiffs' entries subject to the challenged IEEPA duties if such duties are found to be unlawful." *AGS,* Slip Op. 25-154 at 3. This Court ruled that "Judicial estoppel would prevent the Government from taking an inconsistent approach" at a later date. *Id*. at 5. The Court further noted its unanimous agreement in *In Re Section 301 Cases* that the court has "the explicit power to order reliquidation and refunds where the government has unlawfully exacted duties." *Id.* at 6 (citing *In re Section 301 Cases*, 524 F. Supp. 3d 1355, 1363 (Ct. Int'l Tr. 2021)). On this basis, the Court held where its jurisdiction under 28 U.S.C. § 1581(i) has attached, the Court has the authority to reliquidate liquidated entries and order refunds of IEEPA duties in the event that the IEEPA duties are ultimately found to be unlawful by the Supreme Court.

**IV. IEEPA does not authorize tariffs.**

49. The Challenged Tariff Orders cite IEEPA, 50 U.S.C. § 1701 et seq., the National Emergencies Act, 50 U.S.C. § 1601 et seq., section 604 of the Trade Act of 1974, as amended, 19 U.S.C. § 2483, and 3 U.S.C. § 301 for authority to impose tariffs.

50. None of these statutes authorizes the President to impose tariffs. Of these, it is IEEPA alone that the Defendants rely on to impose and collect the IEEPA duties.

51. As the Supreme Court has held, IEEPA does not authorize what the Challenged Tariff Orders seek to impose. *See Learning Resources*, Slip Op. at 20.

**V. Plaintiff paid preliminary IEEPA duties**

52. As of the date of this complaint, Plaintiff has paid IEEPA duties imposed by the Challenged Tariff Orders under IEEPA tariff codes that include 9903.01.25, HTSUS.

53. Plaintiff has paid IEEPA duties on a continuous basis.

54. The entries for which Plaintiff has paid IEEPA duties imposed by the Challenged Tariff Orders have already begun to liquidate, and in some cases have been liquidated for more than 80 days, making them ineligible for refund via the CAPE process in the absence of a court order.

## **STATEMENT OF CLAIMS**

## **COUNT I**

## **THE CHALLENGED TARIFF ORDERS ARE ULTRA VIRES UNDER COURT PRECEDENT**

55. Paragraphs 1 through 54 are incorporated by reference.

56. The Supreme Court, affirming the decision of this Court and the Federal Circuit, held that the President exceeded his authority under IEEPA, 50 U.S.C. § 1701 et seq., when he imposed tariffs on imported goods. *See Learning Resources*, Slip Op. at 20.

57. As this Court explained in *V.O.S. Selections I*, IEEPA authorizes the President only to "investigate, regulate, or prohibit" certain foreign transactions in times of national emergency; it does not authorize the imposition of tariffs or duties on imports, and neither the text of IEEPA nor its legislative history contains any clear delegation to the President to set tariff rates. *See V.O.S. Selections I*, 772 F. Supp. 3d at 1374.

58. The Federal Circuit affirmed that interpretation, holding that Congress did not clearly delegate to the President the authority to impose tariffs under IEEPA and that reading IEEPA to permit such authority would raise grave constitutional concerns, including under the major questions and non-delegation doctrines. *See V.O.S. Selections II*, 149 F.4th at 1376-77.

59. The Supreme Court affirmed the Federal Circuit, finding that "IEEPA does not authorize the President to impose tariffs." *See Learning Resources,* Slip Op. at 20-21.

60. The challenged tariffs in this Complaint are the same as those struck down in *V.O.S. Selections*. They rely exclusively on IEEPA as the basis for imposing duties and revising the HTSUS.

61. Plaintiff respectfully requests that this Court apply its precedent and the binding decision of the Supreme Court, declare the Challenged Tariff Orders unlawful as to Plaintiff, enjoin Defendants from enforcing them as to Plaintiff, and order refund of all IEEPA duties collected from Plaintiff, with interest as provided by law.

62. With regard to covered entries that have liquidated, Plaintiff further requests equitable relief including reliquidation to effectuate the Court's judgment.

**COUNT II**

**(DECLARATORY RELIEF, 28 U.S.C. § 2201)**

63. Paragraphs 1 through 62 are incorporated by reference.

64. Federal courts have the power "to declare the rights and other legal relations of any interested party seeking such a declaration." 28 U.S.C. § 2201(a).

65. Plaintiff's claims present an actual controversy as to the President's authority under IEEPA, the constitutionality of IEEPA, and the authority of CBP to implement and collect the resulting tariffs.

66. Plaintiff is an importer of record and has suffered injury by having been required to pay IEEPA duties as a result of the Challenged Tariff Orders on goods it has imported into the United States.

67. This Court can exercise its equitable power to enter a declaratory judgment that the Challenged Tariff Orders are unlawful for any of the above reasons, and that CBP lacks authority to implement and collect the resulting tariffs, as to Plaintiff.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff respectfully requests that this Court:

a. declare that the President lacks authority under IEEPA to set tariffs;

b. declare that the Challenged Tariff Orders are *ultra vires* and *void ab initio* with respect to Plaintiff;

c. declare that, with respect to Plaintiff, CBP lacks authority to implement and collect any tariffs set out in the HTSUS that are based on the Challenged Tariff Orders;

d. with respect to Plaintiff, enjoin Defendants from imposing and enforcing any tariffs set out in the HTSUS that are based on the Challenged Tariff Orders;

e. order the United States to refund to Plaintiff the IEEPA duties collected on entries for which Plaintiff is the importer of record, including entries that are finally liquidated, with interest as provided by law;

f. award Plaintiff its reasonable costs, including attorneys' fees, incurred in bringing this action; and

g. grant such further relief as this Court deems proper.

Respectfully submitted,

/s/ Heather Jacobson
Heather Jacobson
NAKACHI ECKHARDT & JACOBSON P.C
450 Alaskan Way South, Suite 200
Seattle, WA 98104
(206) 774-0927
hljacobson@tradelawcounsel.com

*Counsel for Plaintiff*

Dated: August 30, 2026